UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



MARK MARENTETTE,

                    Plaintiff,

          v.

CITY OF CANANDAIGUA, NEW YORK,
TED ANDRZEJEWSKI, Individually and as
City Manager of City of Canandaigua, JOHN
GOODWIN, Individually and as Assistant City
Manager, Budget Director, City Manager, and
Designated Appointing Authority of City of
Canandaigua, and NANCY ABDALLAH,
Individually and as Clerk/Treasurer of City of
Canandaigua,

                    Defendants.

**DECISION AND ORDER**

6:17-CV-06716 EAW

## **INTRODUCTION**

Plaintiff Mark Marentette ("Plaintiff") commenced this civil rights action alleging that Defendants violated his First and Fourteenth Amendment rights when they terminated him as Fire Chief of the City of Canandaigua. (Dkt. 21). Specifically, Plaintiff claims that Defendants terminated him without due process, and that Defendants deprived him of his right to petition the government for redress by requiring that he communicate with local government officials through his attorney. (*See id.* at 6-9).

Presently before the Court are Plaintiff's motion for partial summary judgment (Dkt. 33), Plaintiff's motion for a preliminary injunction (Dkt. 34), and Defendants' cross-

motion for summary judgment and judgment on the pleadings (Dkt. 42). For the following reasons, Plaintiff's motions are denied and Defendants' cross-motion is granted.

## BACKGROUND

Plaintiff served as the City of Canandaigua (the "City") Fire Chief from March 2011 until April 2017. (Dkt. 33-2 at ¶ 1; Dkt. 44-10 at ¶ 1). Plaintiff held this position by permanent appointment. (Dkt. 33-2 at ¶ 2; Dkt. 44-10 at ¶ 2). On January 6, 2017, the City served Plaintiff with Charges and Specifications relating to his conduct as Fire Chief. (Dkt. 33-2 at ¶ 3; Dkt. 44-10 at ¶ 3; *see also* Dkt. 43 at 488-499). The Charges and Specifications alleged that Plaintiff committed various acts of misconduct and incompetence in his capacity as Fire Chief, notified Plaintiff of his right to dispute the allegations asserted against him as well as his right to a hearing, and suspended Plaintiff for 30 days without pay while the charges were pending. (*See* Dkt. 33-4; Dkt. 43 at 488-499). Plaintiff answered the allegations on January 13, 2017. (Dkt. 33-5).

On February 1, 2017, the City served Plaintiff with a supplemental Charge and Specification. (Dkt. 33-2 at ¶ 5; Dkt. 44-10 at ¶ 5; *see also* Dkt. 43 at 670-71). The supplemental Charge and Specification alleged further acts of incompetence against Plaintiff, and again notified Plaintiff of his right to dispute the allegations against him as well as his right to a hearing. (Dkt. 43 at 670-71; *see* Dkt. 33-6). The notice also indicated that Plaintiff's suspension without pay would end on February 6, 2017, at which point he would remain suspended with pay while the charges remained pending. (Dkt. 43 at 671). Plaintiff answered the supplemental Charge and Specification on February 7, 2017. (Dkt. 33-7).

A hearing was held pursuant to New York Civil Service Law § 75 on February 16 and 17, 2017. (Dkt. 33-2 at ¶ 8; Dkt. 44-10 at ¶ 8). Plaintiff appeared with an attorney at the hearing, who elicited direct testimony and cross-examined witnesses on Plaintiff's behalf. (Dkt. 44-10 at 6; *see* Dkt. 43 at 43-484). Plaintiff and the City submitted written closing statements. (Dkt. 33-2 at ¶ 9; Dkt. 44-10 at ¶ 9).

On or about April 13, 2017, the hearing officer issued a memorandum report setting forth his findings and recommendations. (Dkt. 33-9; Dkt. 43 at 20-41). The hearing officer found Plaintiff guilty of three charges and four associated specifications alleged by the City based upon "substantial evidence" in the record. (*See* Dkt. 33-2 at ¶ 10; Dkt. 44-10 at 6-7). The hearing officer recommended that Plaintiff be demoted from his position as Fire Chief. (Dkt. 33-9 at 21-22; Dkt. 43 at 20-21; *see also* Dkt. 44-10 at 7).

On April 18, 2017, John Goodwin ("Goodwin"), the Assistant City Manager, issued a Notice of Determination, which adopted the hearing officer's findings of guilt on Charge 3, Specification 1; Charge 6, Specifications 1 and 3; and Charge 7, Specification 4. (*See* Dkt. 33-10; Dkt. 43 at 17). Although Goodwin agreed with the hearing officer's recommendation that Plaintiff "no longer serve under the title of Fire Chief," he disagreed that a demotion was an appropriate penalty. (*See* Dkt. 33-10; Dkt. 43 at 17). Instead, "[g]iven the gravity of the misconduct, previous disciplinary record, unsuccessful attempts to remediate misconduct, and loss of trust," Goodwin terminated Plaintiff and dismissed him from serving in any capacity as an employee of the City's Fire Department. (*See* Dkt. 33-10; Dkt. 43 at 17).

## PROCEDURAL HISTORY

On June 2, 2017, Plaintiff challenged the City's determination in New York State Supreme Court, Ontario County, by commencing a special proceeding pursuant to Article 78 of the New York State Civil Practice Law and Rules. (Dkt. 33-2 at ¶ 13; Dkt. 44-10 at ¶ 13; *see* Dkt. 33-11; Dkt. 42-6); *see also* CPLR 7801-7806. The City answered Plaintiff's Article 78 Petition by filing a Verified Answer on July 6, 2017. (Dkt. 33-2 at ¶ 14; Dkt. 44-10 at ¶ 14). On August 9, 2017, a state supreme court justice issued a decision indicating that the appropriate standard of proof at a § 75 hearing is "substantial evidence," but also transferring the matter to the New York State Supreme Court, Appellate Division, Fourth Department (the "Fourth Department"). (*See* Dkt. 33-13; Dkt. 43-2 at 2).

In the meantime, on September 19, 2017, Plaintiff filed a second action in New York State Supreme Court, Ontario County, alleging that his termination resulted in the deprivation of protected property and liberty interests without due process in violation of the Fourteenth Amendment. (*see* Dkt. 1-1). On October 16, 2017, Defendants Goodwin, the City, and Nancy Abdallah, the City's Clerk and Treasurer, removed that second action to federal court. (Dkt. 1). This is the instant action pending before the undersigned.

On or about November 3, 2017, Plaintiff filed a motion for a preliminary injunction before the Fourth Department, requesting that he be reinstated to "paid leave status pending further order of th[e c]ourt." (Dkt. 43-4). On November 30, 2017, the Fourth Department denied Plaintiff's preliminary injunction request. (Dkt. 44-2).

Plaintiff filed an amended complaint in the instant matter on December 6, 2017, which, among other things, added Defendant Ted Andrzejewski, the City's Manager, to

this action. (Dkt. 9). Subsequently, on December 20, 2017, Plaintiff filed a Second Amended Complaint, which remains the operative pleading in this case. (Dkt. 21). Defendants answered the Second Amended Complaint on January 16, 2018. (Dkt. 24).

On March 2, 2018, United States Magistrate Judge Jonathan W. Feldman stayed discovery in this matter pending the Fourth Department's ruling on Plaintiff's Article 78 Petition. (Dkt. 32). On March 16, 2018, the Fourth Department issued a Memorandum and Order, dismissing Plaintiff's Petition. (Dkt. 33-2 at ¶ 16; Dkt. 44-10 at ¶ 16); *see Marentette v. City of Canandaigua*, 159 A.D.3d 1410 (4th Dep't 2018). On April 11, 2018, Plaintiff sought leave to appeal the Fourth Department's Memorandum and Order to the New York State Court of Appeals (Dkt. 44-7), which was denied on June 27, 2018, *Marentette v. City of Canandaigua*, 31 N.Y.3d 912 (2018).

After the Fourth Department dismissed Plaintiff's Article 78 proceeding, on April 4, 2018, Plaintiff filed a motion for partial summary judgment and a motion for a preliminary injunction in this matter. (Dkt. 33; Dkt. 34). Plaintiff seeks a preliminary injunction restoring him to the City's payroll, effective March 16, 2018 (Dkt. 34-1 at 7), and he also seeks summary judgment as to Defendants' liability for their alleged due process violations (Dkt. 33-1 at 19-20). On May 16, 2018, Defendants filed their cross-motion, seeking dismissal of all of Plaintiff's claims, as well as their opposition papers in response to Plaintiff's motion for a preliminary injunction. (Dkt. 42; Dkt. 45). Defendants seek summary judgment on Plaintiff's due process claims (Dkt. 44-9 at 9-30) and move for judgment on the pleadings on Plaintiff's First Amendment claim for the deprivation of his

right to petition the government for the redress of his grievances (Dkt. 44-9 at 30-32). Plaintiff opposes Defendants' cross-motion. (Dkt. 49).

This Court held oral argument on the pending motions on August 9, 2018, and reserved decision. The Court also granted Plaintiff leave to file a supplemental submission citing to additional authority. On August 13, 2018, Plaintiff filed a letter reciting case authority in further support of his position (Dkt. 53), and on August 15, 2018, Defendants filed a responsive letter in opposition (Dkt. 54). In addition, on November 6, 2018, Plaintiff filed a further letter in support of his position that set forth additional case law. (Dkt. 55). The following day, on November 7, 2018, Defendants filed a letter response. (Dkt. 56).

## DISCUSSION

### I.    Competing Motions for Summary Judgment

#### A.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the

party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B. Plaintiff's Fourteenth Amendment Procedural Due Process Claims are Barred by the Application of Issue Preclusion

Defendants' cross-motion for summary judgment addresses the first, second, fourth, and fifth causes of action set forth in the Second Amended Complaint. However, for purposes of this analysis, only the first and second causes of action require substantive review.[1] Plaintiff's first and second causes of action allege that his due process rights were

---

[1] Plaintiff's fourth and fifth "claims" seek injunctive relief and punitive damages, respectively, for the alleged constitutional violations set forth in the other causes of action. (Dkt. 21 at 8-9). The injunctive relief and punitive damages sought by Plaintiff are

violated when he was terminated from his position as Fire Chief based upon a quantum of proof lower than preponderance of the evidence. (*See* Dkt. 21 at 6-7). Plaintiff's first cause of action alleges that he held a protected Fourteenth Amendment "property interest" in his position as Fire Chief, and, as such, the City was required to prove the Charges and Specifications lodged against him by a preponderance of the evidence. (*Id.* at 6-7). Plaintiff's second cause of action alleges that his liberty interests were taken without due process, focusing on the alleged "stigma" that attached to the charges filed against him. (*Id.* at 7). Plaintiff claims that since the charges were based upon acts of "incompetence, insubordination, dishonesty, filing a false document, and mishandling of public funds," they carried "a stigma" that "has interfered, and will continue to interfere, with his future employment opportunities." (*Id.* at ¶ 44). Plaintiff alleges that this stigma has infringed upon a protected Fourteenth Amendment "liberty interest." (*Id.* at ¶ 45). For this reason, too, Plaintiff asserts that the City was required to prove the Charges and Specifications lodged against him by a preponderance of the evidence. (*Id.* at ¶¶ 46-48).

In their cross-motion, Defendants argue that these issues were already presented to the Fourth Department and were necessarily decided by its Memorandum and Order, which

---

remedies for the harms alleged; however, they do not by themselves set forth independent causes of action. *See Potente v. Citibank, N.A.*, 282 F. Supp. 3d 538, 548 (E.D.N.Y. 2017) ("The [d]efendant is correct that 'injunctions are remedies, not causes of action,' and therefore, the [p]laintiffs' fourth 'cause of action' is dismissed pursuant to Rule 12(b)(6)." (quoting *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014))); *Eldridge v. Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 563-64 (W.D.N.Y. 2013) ("[P]unitive damages are a remedy and not a separate cause of action." (collecting cases)). Accordingly, should Plaintiff's first, second, and third causes of action fail, any request for relief would be a moot point.

denied Plaintiff's Article 78 Petition. (Dkt. 44-9 at 11-22). Specifically, Defendants contend that Plaintiff's due process causes of action are barred by the doctrine of collateral estoppel because the Fourth Department determined that the "substantial evidence" standard is the applicable evidentiary standard in this action, and that Plaintiff's termination did not impose any "added stigma" against him, which would require the application of the "preponderance of the evidence" standard of proof. The Court will first address whether Plaintiff is precluded from asserting his alleged deprivations of protected property and liberty interests without due process of law under the doctrine of collateral estoppel.

"The doctrine of collateral estoppel provides that 'when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit.'" *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 424 (S.D.N.Y. 2012) (quoting *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011)). "It is well-settled that collateral estoppel may bar a plaintiff from bringing an action in federal court pursuant to 42 U.S.C. § 1983." *Shell v. Brun*, 362 F. Supp. 2d 398, 400 (W.D.N.Y. 2005); *see Hayes*, 853 F. Supp. 2d at 424 ("State court judgments must be given the same preclusive effect in federal court as they would be given in courts of the state itself. . . ."). Accordingly, "New York law governs the preclusive effect of a prior Article 78 judgment on a § 1983 action in federal court." *Franza v. Stanford*, No. 16-CV-7635 (KMK), 2018 WL 914782, at *7 (S.D.N.Y. Feb. 14, 2018).

> In New York, collateral estoppel has two essential elements. "First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from

relitigating the issue must have had a full and fair opportunity to contest the prior determination."

*Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir. 2007) (quoting *Juan C. v. Cortines*,

89 N.Y.2d 659, 667 (1997)).

In both his Article 78 Petition as well as his briefing before the Fourth Department,

Plaintiff argued that the Fourteenth Amendment mandated a preponderance of the evidence

standard of proof instead of the substantial evidence standard at the § 75 hearing. (*See* Dkt.

42-6 at 17-20; Dkt. 44-3 at 26-32). Plaintiff raises this very same issue in the instant matter.

(Dkt. 21 at ¶¶ 32, 41, 46-48). In its Memorandum and Order, the Fourth Department

"reject[ed Plaintiff's] contention that preponderance of the evidence is the applicable

evidentiary standard in this case." *Marentette*, 159 A.D.3d at 1411. The Fourth

Department explained:

> It is well established that substantial evidence is generally the applicable evidentiary standard for disciplinary matters involving public employees under Civil Service Law § 75, and that due process requires application of the preponderance of the evidence standard only "when the penalty of dismissal is accompanied by some added stigma."

*Id.* (quoting *Suitor v. Keller*, 256 A.D.2d 1140, 1140 (4th Dep't 1998)).

Plaintiff argues that that "the Appellate Division did not address the deprivation of

his property interest in his position." (Dkt. 49 at 6). The Second Circuit recognizes that

continued public employment covered by Civil Service Law § 75 gives rise to a property

interest protected by the Due Process Clause of the Fourteenth Amendment. *See O'Neill*

*v. City of Auburn*, 23 F.3d 685, 688 (2d Cir. 1994) ("We have previously held that § 75

gives covered employees a property interest in their employment, so that they may not be

terminated without notice and hearing."); *Dwyer v. Regan*, 777 F.2d 825, 829 (2d Cir. 1985) ("[A]n employee of the New York City Police Department whose position was subject to N.Y. Civ. Serv. Law § 75(1) thereby possessed an enforceable expectation of continued public employment, which constituted a property interest in [her] job that will be protected by the due process clause." (quotation marks omitted)), *modified*, 793 F.2d 457 (2d Cir. 1986); *Anderson v. Dolce*, 653 F. Supp. 1556, 1565 (S.D.N.Y. 1987) ("Both federal and state courts have found that Section 75 creates a property interest in continued employment, with the requisite minimum standards of due process attaching.").

Although the Fourth Department's Memorandum and Order did not expressly state that the "substantial evidence" standard of proof satisfied the requirements of due process with respect to any "property rights" Plaintiff held in his job, that is certainly the impact of the decision. The Appellate Division expressly rejected the application of the preponderance of the evidence standard to the facts of this case. *Marentette*, 159 A.D.3d at 1411. The Appellate Division determined that the substantial evidence standard "is generally the applicable evidentiary standard for disciplinary matters involving public employees under Civil Service Law § 75," and that principles of "due process" only require the application of the more heightened preponderance standard of proof where a plaintiff's rights had been infringed by "some added stigma." *See id.* (quotation marks omitted).

The Court further notes that the Fourth Department did not use the phrase "liberty interest" in its decision. Nonetheless, as explained below, that court's analysis of whether any "stigma" existed—requiring the application of the preponderance standard of proof—

- 11 -

also, by necessary implication, disposed of Plaintiff's claimed deprivation of his liberty interest.

The case law is clear that a due process liberty interest may be impaired when the termination of a protected government employee hinders that employee's future employment opportunities or subjects him to a public registry. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573-74 (1972) (noting that a Fourteenth Amendment liberty interest would be implicated if an individual's reputation and standing in the community were "seriously damage[d]" or if future employment opportunities were lost as a result of his termination); *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (stating that one's loss of reputation "coupled with the deprivation of a more tangible interest, such as government employment," may implicate a liberty interest); *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (2d Cir. 1996) (noting that the "decision not to reemploy, standing alone, does not deprive an employee of liberty," and that "[s]pecial aggravating circumstances are needed to implicate a liberty interest," such as public charges of dishonesty and immorality); *O'Neill*, 23 F.3d at 691-92 (stating that a due process liberty interest may be implicated by "stigmatizing governmental accusations that impose a substantial disability," such as charges of "professional incompetence made in connection with an employee's termination" that "significantly restrict future employment opportunities"); *Valmonte v. Bane*, 18 F.3d 992, 994 (2d Cir. 1994) (holding that "the dissemination of information from the Central Register to potential child care employers, coupled with the defamatory nature of inclusion on the list, does implicate a liberty interest"); *Miller v. DeBuono*, 90 N.Y.2d 783, 791-92 (1997) (stating that an individual

may "invoke the procedural protection of the Due Process Clause" to defend a protected "liberty interest" where the "inclusion and dissemination of information" on a public registry harms "an individual's good name, integrity or standing in the community" and "also affects that individual's present employment or effectively forecloses possible future employment opportunities"); *Parr v. Onondaga Cty. Legislature*, 139 Misc. 2d 975, 977 (N.Y. Sup. Ct., Onondaga Cty. 1988) (noting that the Supreme Court in *Roth* indicated "that where a public employee is terminated two liberty interests might be involved: first, is the individual's interest in his or her good name, reputation, honor, or integrity, and the second, is the individual's interest in avoiding a stigma or other disability that forecloses other employment opportunities"), *aff'd sub nom. Parr v. Onondaga Cty. Legislature & Cty. of Onondaga*, 156 A.D.2d 985 (4th Dep't 1989).

Here, Plaintiff has specifically alleged that "the stigma attached with the charges leading to his removal infringe[s] on [his] 'liberty' interest" because it "has interfered, and will continue to interfere, with his future employment opportunities." (Dkt. 21 at ¶¶ 44-45). The Fourth Department could not have been clearer in determining that "no such stigma is present," and in finding no evidence suggesting Plaintiff had suffered any lost future employment opportunities in his field or that he had been placed on a public registry. *Marentette*, 159 A.D.3d at 1411-12. In other words, by concluding that the charges lodged against Plaintiff did not prevent him from seeking future employment in the field of firefighting services and did not require that he be placed on a public registry, the Fourth Department necessarily found that Plaintiff's liberty interests were not impaired by the City's termination of his employ.

Accordingly, Plaintiff's contention that the Fourteenth Amendment required the hearing officer to apply a preponderance of the evidence standard before depriving him of a protected property or liberty interest was necessarily rejected by the Appellate Division, and thus, the first requirement of collateral estoppel is satisfied. *See Fuchsberg & Fuchsberg v. Galizia*, 300 F.3d 105, 109 (2d Cir. 2002) ("Although the Appellate Division's opinion . . . does not explicitly address the issue of the proper interpretation of Paragraph B.2, its decision will nonetheless have preclusive effect with regard to that issue if resolution of the issue was by necessary implication . . . contained in that which [was] explicitly decided." (quotation marks omitted)); *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997) ("The prior decision need not have been explicit on the point, since [i]f by necessary implication it is contained in that which has been explicitly decided, it will be the basis for collateral estoppel." (quotation marks omitted)); *Davis v. Jackson*, No. 15-CV-5359 (KMK), 2018 WL 358089, at *9 (S.D.N.Y. Jan. 8, 2018) ("[N]ot only did [the p]laintiff raise each of his discrete due process claims in the Article 78 proceedings, but in both instances, the state court necessarily rejected his claims by concluding on the merits that [the p]laintiff had not met his burden of establishing that the procedures used, or subsequent outcome, of either hearing constituted a violation of [the p]laintiff's due process right."); *Franza*, 2018 WL 914782, at *8 (finding that where the plaintiff argued that 9 NYCRR § 8002.3 "violated his procedural due process rights" in his Article 78 petition, "the Article 78 decision, in dismissing [the p]laintiff's petition and concluding that he was correctly denied parole under New York law, already decided the issue of whether § 8002.3 violates [the p]laintiff's procedural due process rights, and he

may not relitigate it in this [c]ourt"); *McGowan v. Schuck*, No. 12-CV-6557-FPG, 2016 WL 4611249, at *10 (W.D.N.Y. Sept. 6, 2016) ("The [c]ourt finds . . . that even though the Article 78 court did not precisely address each of these four issues, its determination that the hearing was 'fair' functions as an actual decision on each of the issues."); *Latino Officers Ass'n v. City of New York*, 253 F. Supp. 2d 771, 787 (S.D.N.Y. 2003) (finding that "[t]he state court's determination that the police commissioner's decision to terminate [the plaintiff] was supported by substantial evidence and that the penalty of dismissal did not 'shock our sense of fairness[]' . . . necessarily implied rejection of [his] claim that his termination was discriminatory and retaliatory"); *see also Walker v. City Of New York*, 205 F.3d 1327, 2000 WL 227437 (Table), at *2 (2d Cir. 2000) (affirming the district court's ruling that the plaintiff's constitutional claims were necessarily decided by the state trial and appellate courts where the Appellate Division had held that "[t]he 'substantial evidence' standard for establishing a parking violation set forth in respondent's hearing procedures manual does not violate due process").

Plaintiff also argues that "[t]he Appellate Division is limited to reviewing the record of the hearing." (Dkt. 49 at 7). Plaintiff's argument appears to directly challenge whether he received a full and fair opportunity to contest the claims he now seeks to pursue before this Court. However, "'the general inability to obtain in the Article 78 proceeding all the discovery [the plaintiff] might be entitled to in federal court' does not 'diminish the full and fair opportunity [the plaintiff] had to litigate these issues in the Article 78 proceeding.'" *Dolan v. Roth*, 170 F. App'x 743, 747 (2d Cir. 2006) (quoting *Moccio v. N.Y.S. Office of Court Admin.*, 95 F.3d 195, 202 (2d Cir. 1996), *abrogated on other grounds by Exxon*

- 15 -

*Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)). Indeed, Plaintiff submitted an Article 78 petition, which was fully briefed and argued before the Fourth Department, and he had the opportunity to file and brief a motion for a preliminary injunction before the same court while his special proceeding was pending. *See Franza*, 2018 WL 914782, at *9 ("[I]n light of the fact that [the p]laintiff submitted a petition with full briefing and a reply to the opposition papers, any allegation that [he] was denied a full and fair opportunity to litigate his procedural due process claim is not plausible."); *Ortiz v. Russo*, No. 13 CIV. 5317 ER, 2015 WL 1427247, at *7 (S.D.N.Y. Mar. 27, 2015) (finding that the plaintiff had a full and fair opportunity to litigate the relevant issue where "he submitted a[n Article 78] petition supported by exhibits, as well as a reply to the respondents' opposition papers"); *Fortunatus v. Clinton County, New York*, 937 F. Supp. 2d 320, 332 (N.D.N.Y. 2013) ("[The plaintiff] cannot gainsay that he had a full and fair opportunity to litigate his claims of denial of equal protection and due process. In addition to his lengthy petition, [the plaintiff] submitted sworn affidavits, exhibits, and a memorandum of law in support of his claims, all of which would substantiate a full opportunity to litigate."); *Bal v. N.Y.C. Loft Bd.*, No. 00 CIV. 1112 JGK, 2000 WL 890199, at *5 (S.D.N.Y. July 5, 2000) (stating that "the opportunity to submit an Article 78 petition gave the plaintiff a full and fair opportunity to litigate his claim" because "the Appellate Division had the benefit of the administrative record, as well as [the] plaintiff's brief in support of his petition, in which he fully explained his procedural claims"). As such, the Court rejects any argument that Plaintiff was deprived of a full and fair opportunity to litigate the claims that he raised during his Article 78 proceedings.

Plaintiff also focuses on the nature of a § 1983 federal action. (*See* Dkt. 49 at 7-8). Specifically, Plaintiff cites to *Monroe v. Pape*, 365 U.S. 167 (1961) for the proposition that his assertion of the § 1983 remedy is appropriate in this case because the state law remedy—set forth in § 75 of the Civil Service Law—is "not available." *See id.* at 174 ("The third aim was to provide a federal remedy where the state remedy, though adequate in theory, was not available in practice."). New York Civil Service Law § 75(1) provides that a covered public employee "shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." Plaintiff appears to take the position that he was not afforded a meaningful opportunity to challenge the charges of incompetency or misconduct levied against him because, under New York law, the hearing officer need only apply the "substantial evidence" standard.

The Court finds Plaintiff's citation to *Monroe* to be irrelevant to the application of collateral estoppel in this matter. Broadly speaking, courts in this Circuit have consistently held that a state court judgment upon an Article 78 petition may preclude a subsequently filed § 1983 action. *See, e.g., Morey v. Somers Cent. Sch. Dist.*, No. 06 CIV. 1877 WCC, 2007 WL 867203, at *4 (S.D.N.Y. Mar. 21, 2007) ("[W]e begin by noting that factual findings from a state administrative hearing held pursuant to New York Civil Service Law § 75 and subsequently reviewed for substantial evidence in an Article 78 proceeding can serve as the basis for issue preclusion in federal court."); *see also Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005) ("[I]n federal actions based on 42 U.S.C. § 1983, state administrative fact-finding is given the

same preclusive effect as it would receive in courts of the same state."); *Vann v. Fischer*, No. 11 Civ.1958(KPF), 2014 WL 4188077, at *25 (S.D.N.Y. Aug. 25, 2014) (stating that the plaintiff was barred from relitigating issues concerning bias and due process in a § 1983 action, which had previously been raised during an Article 78 proceeding).

The Second Circuit has cautioned that even if issue preclusion would be appropriate under New York law, "as a matter of federal law[,] a state cannot give preclusive effect in its own courts to a constitutionally infirm judgment." *Giakoumelos v. Coughlin*, 88 F.3d 56, 61 (2d Cir. 1996). "To qualify for the full faith and credit mandate of 28 U.S.C. § 1738, ... 'state proceedings need no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause.'" *Fym Clinical Lab., Inc. v. Perales*, No. 88 CIV 6210, 1988 WL 235578, at *5 (S.D.N.Y. Nov. 4, 1988) (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 (1982)). Courts "must bear in mind that no single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause." *Kremer*, 456 U.S. at 483. Since the parties "were fully able to brief all the issues to the Appellate Division," there is no evidence that the judgment is constitutionally infirm. *Borcsok v. Early*, No. 9:03-CV-395 (GLS/RFT), 2007 WL 2454196, at *11 (N.D.N.Y. Aug. 23, 2007), *aff'd*, 299 F. App'x 76 (2d Cir. 2008). Furthermore, it is well-established in this Circuit that "the different standard of proof between [an] Article 78 proceeding and [a] federal action" does not preclude the application of collateral estoppel. *Constantine v. Teachers Coll.*, 448 F. App'x 92, 94 (2d Cir. 2011); *see Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 732 (2d

Cir. 2001) ("[A] shift in the burden of proof is not dispositive as to whether collateral estoppel can be applied.").

Therefore, in summary, the Court concludes that the doctrine of collateral estoppel precludes Plaintiff's assertion of his first and second causes of action in the Second Amended Complaint. The constitutional issues raised in those causes of action challenging the burden of proof applied when terminating Plaintiff's position as Fire Chief, were necessarily decided by the Fourth Department in its March 16, 2018, Memorandum and Order. Plaintiff's second cause of action alleges that the Charges and Specifications lodged against him carried a "stigma" that infringed upon a protected "liberty interest," which "has interfered, and will continue to interfere, with his future employment opportunities." (Dkt. 21 at ¶ 44). However, the Fourth Department rejected the concept of any associated "stigma," determining that there was no evidence that Plaintiff had lost any future employment opportunities in his field as a result of the City's actions. *See Marentette*, 159 A.D.3d at 1411-12. Since Plaintiff had a "full and fair opportunity" to litigate this issue before the Fourth Department, the doctrine of collateral estoppel precludes Plaintiff from asserting his second cause of action in this Court and from otherwise taking a "second bite at the apple." Likewise, while Plaintiff's "property interest" in the Fire Chief position was not expressly discussed by the Fourth Department, the court plainly held that the substantial evidence standard applied to any decision to terminate Plaintiff's employment.

## C. Reaching the Merits of Plaintiff's First Cause of Action, the Result is the Same

Even if the doctrine of collateral estoppel does not bar Plaintiff from claiming that a pre-termination hearing must employ the preponderance standard of proof before the hearing officer extinguishes a protected "property interest," Plaintiff's first cause of action still fails on the merits.

### 1. General Principles of Federal Due Process in the Employment Context

The Due Process Clause was "'intended to secure the individual from the arbitrary exercise of the powers of government' . . . [and] serves to prevent governmental power from being 'used for purposes of oppression.'" *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (citations omitted). To succeed on a due process claim, a plaintiff must establish that "he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest." *Valmonte*, 18 F.3d at 998. Where a state employee has a property right in her continued employment under state law, that property right is protected by the Due Process Clause. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539 (1985).

"[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" *Id.* at 541 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "A public employee who has a right not to be fired without 'just cause'. . . has 'a property interest in h[er] employment that qualifie[s] for the protections of procedural due process.'" *Otero v. Bridgeport Hous. Auth.*, 297 F.3d 142, 151 (2d Cir. 2002) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). "Whether the Plaintiff received the

process to which he was entitled to safeguard his property interest in his job invokes the interest-balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)." *Holmes v. Town of E. Lyme*, 866 F. Supp. 2d 108, 122 (D. Conn. 2012).

In *Loudermill*, the Supreme Court applied the *Mathews* test by balancing "the private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens." *Mayfield v. Kelly*, 801 F. Supp. 795, 798 (D.D.C. 1992) (quoting *Loudermill*, 470 U.S. at 542-43); *see Busey v. Richland Sch. Dist.*, 172 F. Supp. 3d 1167, 1176 (E.D. Wash. 2016) ("The employee has a significant interest in retaining employment, the government has an interest in expeditiously removing unsatisfactory employees and avoiding administrative burdens, and both have an interest in preventing an erroneous termination."), *aff'd*, 732 F. App'x 577 (9th Cir. 2018). The Supreme Court concluded that federal due process requires "'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Loudermill*, 470 U.S. at 542.

"[I]n the employment context[,] . . . a pre-termination hearing 'need not be elaborate' so long as it provides '[t]he essential requirements of due process,' which are 'notice and an opportunity to respond.'" *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 467 (2d Cir. 2006) (quoting *Loudermill*, 470 U.S. at 545-46). Indeed, the Second Circuit has described the requisite pre-termination hearing as "a minimal one." *Locurto v. Safir*, 264 F.3d 154, 173 (2d Cir. 2001); *see Gilbert v. Homar*, 520 U.S. 924, 929 (1997) ("[A] public employee dismissable only for cause [is] entitled to a very limited hearing

prior to his termination, to be followed by a more comprehensive post-termination hearing."). For tenured public employees, "a pre-termination hearing does not purport to resolve the propriety of the discharge, but serves mainly as a check against a mistake being made by ensuring there are *reasonable grounds* to find the charges against an employee are true and would support his termination." *Locurto*, 264 F.3d at 173-74 (emphasis added) (citing *Loudermill*, 470 U.S. at 545-46). Accordingly, "[a]n employee who has a property interest in his employment 'is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story,' before he is subjected to the loss of employment." *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 212 (2d Cir. 2002) (quoting *Loudermill*, 470 U.S. at 546). To require more "would impede the government's interest in quickly removing from service an unsatisfactory employee." *Locurto*, 264 F.3d at 174.

However, this minimal pre-termination hearing must be adequately supplemented by a subsequent opportunity to pursue a "full post-termination hearing." *Loudermill*, 470 U.S. at 546; *see Locurto*, 264 F.3d at 174 ("In reaching this result, *Loudermill* relied heavily on the fact that the state had afforded the plaintiff a full adversarial hearing subsequent to termination."). It is well-established that "Article 78 provides an adequate post-deprivation remedy sufficient to satisfy procedural due process requirements" when a public employee is terminated upon the conclusion of a § 75 hearing. *Chaffer v. Bd. of Educ. of City Sch. Dist. of City of Long Beach*, 75 F. App'x 12, 13 (2d Cir. 2003); *see, e.g.*, *Locurto*, 264 F.3d at 174-75. It must be noted that "[n]ot all deprivations of interests protected by the Fourteenth Amendment require full evidentiary hearings before impartial decision-makers

using a preponderance of the evidence or higher standard." *Goff v. Dailey*, 991 F.2d 1437, 1440-41 (8th Cir. 1993).

### 2. "Substantial Evidence" is a Constitutionally Sufficient Standard at a § 75 Pre-termination Hearing

Having discussed the constitutional context of the pre-termination hearing at issue here, the Court turns to Plaintiff's challenge to the standard of proof applied at the hearing. Specifically, as noted above, Plaintiff contends that he was deprived of his right to procedural due process by the hearing officer's use of the "substantial evidence" standard of proof rather than the "preponderance of the evidence" standard. The "substantial evidence" standard has been described as "more than a scintilla, but less than a preponderance." *Metro-N. Commuter R.R. Co. v. U.S. Dep't of Labor*, 886 F.3d 97, 106 (2d Cir. 2018) (citing *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir. 1999)). Whereas a party must show that a given "circumstance was more likely than not" to be true under a preponderance standard, *United States v. Yannai*, 791 F.3d 226, 242 (2d Cir. 2015), "[s]ubstantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Fund for Animals v. Kempthorne*, 538 F.3d 124, 132 (2d Cir. 2008) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)).

"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" *Addington v. Texas*, 441 U.S. 418, 423 (1979)

(quoting *In re Winship*, 397 U.S. 358, 370 (1970)). "*Addington* teaches that, in any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Santosky v. Kramer*, 455 U.S. 745, 755 (1982). In determining what standard of proof is constitutionally sufficient for due process purposes, the Court looks to the three-pronged balancing test enunciated in *Mathews*. *See Medina v. California*, 505 U.S. 437, 444 (1992) (acknowledging that the *Mathews* test was applied in determining the appropriate standard of proof for due process purposes in *Addington* and *Santosky*). In undertaking the *Mathews* analysis, courts address:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335; *see, e.g., Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010).

Considering the first *Mathews* factor, the termination of employment by permanent appointment carries weighty significance. *See Hudson v. City of Chicago*, 374 F.3d 554, 560 (7th Cir. 2004) ("The loss of a job is an extremely significant deprivation."). The loss of one's job may also mean the temporary loss of one's means of subsistence. Even so, while the loss of a protected position of public employment implicates a property interest, any such deprivation does not rise to the level, in and of itself, of impacting a protected

liberty interest. *Cf. Tsirelman v. Daines*, 794 F.3d 310, 315 (2d Cir. 2015) ("[P]hysicians have an important, but not compelling, property interest in their medical licenses and a liberty interest in pursuing their chosen profession."); *RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 918 n.4 (2d Cir. 1989) ("[P]laintiffs denied licenses required for pursuing a particular occupation . . . have a liberty interest in earning a livelihood and are normally not required to show an entitlement to the license they seek in order to state a claim."); *see also Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 985 F. Supp. 316, 319-20 (E.D.N.Y. 1997) (distinguishing between the property interest involved when one's "continued employment" is threatened by a disciplinary hearing and the liberty interest involved when one seeks to clear his name from stigmatizing allegations).

The Supreme Court has indicated that preponderance of the evidence is the standard of proof necessary to demonstrate that a citizen has committed an expatriating act so as to deprive him of his status as a United States' citizen. *See Vance v. Terrazas*, 444 U.S. 252, 266 (1980) ("[E]xpatriation proceedings are civil in nature and do not threaten a loss of liberty."). By comparison, the termination of a covered public employee under Civil Service Law § 75 occurs in the administrative context, and does not impact such a vital interest as one's continued national identity as a United States' citizen. *See Pascazi v. Rivera*, No. 13-CV-9029 NSR, 2015 WL 845839, at *1-2, *10 (S.D.N.Y. Feb. 26, 2015) (rejecting the plaintiff's argument that he "did not receive due process because the hearing officer purportedly applied a 'substantial evidence' standard" during an administrative proceeding pursuant to New York's Prevailing Wage Law, and stating that "[t]he substantial evidence standard has been upheld as constitutional in other contexts"); *Lefford*

*v. McCall*, 916 F. Supp. 150, 155-56 (N.D.N.Y. 1996) (acknowledging that the court could impose a preponderance of the evidence standard "because State Defendants were directed to hold a[] hearing at which they would bear the burden of proof," but concluding, after considering the *Mathews* factors, "that the revocation of plaintiff's disability pension does not comport with the requirements of due process unless the findings of the hearing officer are supported by substantial evidence"); *see also Binder v. Cold Spring Harbor Cent. Sch. Dist.*, No. CV 09-4181 (SJF) (ARL), 2010 WL 3257708, at *7 (E.D.N.Y. July 19, 2010) (noting that while the hearing officer used the "preponderance of the evidence standard," the "competent and substantial evidence standard" was the "proper" standard of proof during a school disciplinary hearing), *report and recommendation adopted sub nom.*, No. CV-09-4181 (SJF) (ARL), 2010 WL 3257849 (E.D.N.Y. Aug. 13, 2010); *Rubino v. Saddlemire*, No. 305CV1955 (PCD), 2007 WL 685183, at *8 (D. Conn. Mar. 1, 2007) (recognizing that "the Second Circuit has not specifically addressed the issue of the sufficiency of the evidence in school disciplinary proceedings," but determining, based upon out-of-Circuit precedent "as well as the Supreme Court's requirement that the hearing be a 'meaningful' one, that the University's disciplinary action must be supported by substantial evidence in order to comport with due process" (footnotes and citations omitted)); *Balbuena v. Mattingly*, No. 05 CIV. 2986 (TPG), 2007 WL 2845031, at *9 (S.D.N.Y. Sept. 28, 2007) (noting that while the plaintiff alleges that certain state regulations "violate due process because the agency need only support the propriety of the removal with 'substantial evidence,' rather than with 'clear or convincing evidence' or a 'preponderance of the evidence[,]' . . . [the plaintiff] has stated no case law to support the

proposition that a 'substantial evidence' standard at a hearing to remove a child from a kindship foster home violates due process").

In evaluating the second *Mathews* factor, neither the risk of an erroneous deprivation of the protected interest nor the benefit of additional or substitute safeguards are particularly high given the context in which the pre-termination hearing is held. The Second Circuit has "pointed out that the risk of erroneous deprivation could be mitigated by the availability of a prompt post-deprivation hearing." *Ray v. City of New Haven*, No. 3:17-CV-01081 (VLB), 2018 WL 1141359, at *5 (D. Conn. Mar. 1, 2018); *see Nnebe v. Daus*, 644 F.3d 147, 159 (2d Cir. 2011) ("In the predeprivation context, this factor tips the scales decisively in the favor of the City, because the risk of erroneous deprivation is mitigated by the availability of a prompt post-deprivation hearing."); *Schneider v. Chandler*, No. 16CV6560(DLC), 2018 WL 770395, at *5 (S.D.N.Y. Feb. 7, 2018) ("As for the second factor, the risk of erroneous deprivation and the probable value of additional procedures, courts consider both the significance of the pre- and postdeprivation process." (citing *Loudermill*, 470 U.S. at 547 n.12 (noting that the consideration of post-termination proceedings "is relevant to the necessary scope of pretermination procedures"))), *appeal filed*, No. 18-631, 2018 WL 770395 (2d Cir. Mar. 6, 2018). Plaintiff argues that the risk of erroneous deprivation is too high because the substantial evidence standard is lower than the preponderance standard of proof, and thus, it may be possible for a public employee to be deprived of a protected property interest even where no misconduct or incompetence has actually occurred. (*See* Dkt. 33-1 at 9-10 (arguing that under the substantial evidence

standard, "an individual can lose his constitutionally-protected property rights on evidence that, while far from convincing, is at least 'more than seeming or imaginary'")).

However, in this context, the pre-termination hearing is not intended to be the final adjudication on the merits. As explained above, such a hearing "does not purport to resolve the propriety of the discharge, but serves mainly as a check against a mistake being made by ensuring there are reasonable grounds to find the charges against an employee are true and would support his termination." *Locurto*, 264 F.3d at 173-74 (emphasis added) (citing *Loudermill*, 470 U.S. at 545-46). The substantial evidence standard requires just that. *See Sprint Spectrum L.P. v. Willoth*, 176 F.3d 630, 638 (2d Cir. 1999) ("Substantial evidence requires evaluation of the entire record, including opposing evidence." (citing *Am. Textile Mfrs., Inc. v. Donovan*, 452 U.S. 490, 523 (1981)). Indeed, the substantial evidence standard appears to be appropriately suited to serve as a preliminary check against baseless administrative charges by ensuring that the record contains "reasonable grounds" to support the charges at issue. *See Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (stating that substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Furthermore, in light of the substantial post-termination procedures available to the terminated employee, through an Article 78 proceeding, *see Locurto*, 264 F.3d at 174-75 (stating that "[a]n Article 78 proceeding . . . constitutes a wholly adequate post-deprivation hearing for due process purposes" because it "permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims"), any risk of an erroneous deprivation is significantly lessened.

- 28 -

Finally, as to the third *Mathews* factor, the government clearly has an "interest in quickly removing from service an unsatisfactory employee." *Locurto*, 264 F.3d at 174. This interest is protected from the imposition of unnecessary administrative burdens by requiring only that the government give "'notice of the charges against [the employee], an explanation of the employer's evidence, and an opportunity to present his side of the story,' before he is subjected to the loss of employment." *Munafo*, 285 F.3d at 212 (quoting *Loudermill*, 470 U.S. at 546). The government's interest is that much more significant where, as here, the employee maintains a position of great public trust related to the safety of the community.

The Supreme Court has stated that "the State has a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers." *Gilbert*, 520 U.S. at 932. While *Gilbert* is not directly comparable, given that no felony charges were filed against Plaintiff, the City still retains a significant interest in maintaining the public's trust in the administrative competence and honesty of its highest-ranking fire official. *See also Ores v. Vill. of Dolton*, 152 F. Supp. 3d 1069, 1080 (N.D. Ill. 2015) (stating that the village "had a significant interest in maintaining public trust and ensuring that its high-ranking police officers were not indifferent to allegations of serious police misconduct in their ranks"); *Skogen v. City of Overland Park*, No. CIV.A. 08-2657-DJW, 2010 WL 973375, at *18 (D. Kan. Mar. 16, 2010) ("Defendant has a significant interest in preserving the integrity of its police department and maintaining public trust in its police department."), *aff'd sub nom. Skogen v. City of Overland Park, Kan.*, 404 F. App'x 327

(10th Cir. 2010); *see generally Ibarra v. Martin*, 143 F.3d 286, 289 (7th Cir. 1998) (noting that "the state has a significant interest in the integrity of its probation officers" even where felony charges are not filed); *Addeo v. Phila. Firefighter & Paramedic Union: Local 22 of Int'l Ass'n of Firefighters*, No. CV 17-2239, 2018 WL 1378939, at *5 (E.D. Pa. Mar. 19, 2018) (stating that the plaintiff, "[a]s a firefighter, . . . occupied a position of great public trust and high public visibility, comparable to the police officer in *Gilbert*" (quotation marks omitted)).

Accordingly, the three *Mathews* factors weigh in favor of applying the "substantial evidence" standard as opposed to the "preponderance of the evidence" standard of proof. In support of his position, Plaintiff relies upon *Tsirelman v. Daines*, 794 F.3d 310 (2d Cir. 2015), where the Second Circuit rejected the position that the state was required to apply the "clear and convincing evidence" standard to "fraud-based medical disciplinary proceedings." *Id.* at 316. In doing so, the *Tsirelman* court held that the preponderance of the evidence standard, which was used by the state agency in revoking the physician's medical license, was constitutionally sufficient. *Id.* at 314-16. Nonetheless, *Tsirelman* did not analyze the constitutional sufficiency of the "substantial evidence" standard or involve the termination of a public employee covered by Civil Service Law § 75. As such, *Tsirelman* does not control the outcome of this case. In addition, the Supreme Court's decision in *Steadman v. S. E. C.*, 450 U.S. 91 (1981), also relied on by Plaintiff, is inapposite. In *Steadman*, the Supreme Court found that the preponderance of the evidence standard was applicable based upon the Court's statutory construction of § 7(c) of the

Administrative Procedure Act, not the Due Process Clause of the Fourteenth Amendment. *Id.* at 97-102.

Plaintiff further relies upon *Burka v. N.Y.C. Transit Auth.*, 739 F. Supp. 814 (S.D.N.Y. 1990) for the proposition that the substantial evidence standard is insufficient in the context of public employee termination proceedings, but that reliance is misplaced. First, to the extent *Burka* notes that "New York courts have designated the slightly higher[] preponderance of the evidence standard as appropriate for Section 75 hearings" on "at least two occasions," *id.* at 841 n.17, both case citations refer to trial level decisions from the 1970s, *see Antinore v. State*, 79 Misc. 2d 8, 11 (N.Y. Sup. Ct., Monroe Cty. 1974), *rev'd*, 49 A.D.2d 6 (4th Dep't 1975), *aff'd*, 40 N.Y.2d 921 (1976); *Foran v. Murphy*, 73 Misc. 2d 486, 489 (Sup. Ct., N.Y. Cty. 1973). It does not appear that any of the New York State appellate courts have ever adopted these cases for that proposition. Secondly, the *Burka* court acknowledged that "the requirements of procedural due process vary from case to case," *Burka*, 739 F. Supp. at 839; *see Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("Due process . . . is a flexible concept that varies with the particular situation."), and that "[t]he safeguards offered by Section 75 would satisfy due process standards in many situations," *Burka*, 739 F. Supp. at 839; *see generally Johnson v. Dir., Downstate Med. Ctr., State Univ. of N.Y.*, 52 A.D.2d 357, 368 (2d Dep't 1976) ("The procedures outlined in section 75 . . . meet the procedural due process requirements of the Fourteenth Amendment."), *aff'd*, 41 N.Y.2d 1061 (1977).

Additionally, the *Burka* court's criticism of the "substantial evidence" standard must be viewed in light of the other difficulties presented under the facts of that case.

Specifically, *Burka* involved the termination of public employees based upon the results of a urine test used to determine the presence of substance abuse. The *Burka* court was primarily concerned with the public employees' ability to refute the urine test results at a section 75 hearing. *See id.* at 839-40 ("The Court finds that, despite the safeguards provided by Section 75, the refutation of a [Division for Substance Abuse Services Laboratory] report of a positive test result . . . was a virtually impossible task."); *see also id.* at 845 n.23 ("[M]erely requiring a higher standard of evidence is not enough to satisfy due process if there are not adequate means for the employee to gain access to evidence to support his defense."). The court determined that, as a practical matter, the employees could not realistically demonstrate "that a mistake was made inside the . . . laboratory either in procedures or in testing" under the administrative procedures provided pursuant to § 75. *Id.* at 840. In addition, while the employees could have presented "evidence extraneous to the drug test, which showed that the employee was not a drug user[,] . . . [f]or most accused employees . . . the only extrinsic evidence was their own denial, which would most likely be insufficient" to rebut the weight given to the laboratory report. *Id.* The *Burka* court did not criticize the application of the substantial evidence standard of proof in isolation; rather, it determined that "[t]he difficulty of meaningfully challenging a drug test report in a Section 75 hearing was *compounded*" by the use of that standard under the circumstances presented. *Id.* (emphasis added). In other words, because the laboratory report was admissible evidence in the administrative hearing, absent a meaningful ability to challenge the report itself, the government could satisfy the substantial evidence standard simply by

submitting "the drug test results without supporting the test result with any additional evidence, such as the primary data material from which the result was derived." *Id.*

The *Burka* court did not require the use of the preponderance of the evidence standard in any or all § 75 hearings. Indeed, the court noted that in "late 1986," the New York City Transit Authority revised its urine-testing procedures to inform employees that their urine analysis could be re-tested. *Id.* at 843. The court went on to conclude that the plaintiffs "have not made any showing that the utilization of the substantial evidence standard during the post-'late 1986' period rendered the Section 75 hearings inadequate for an independent test result to challenge meaningfully the veracity of" the laboratory report. *Id.* at 845 n.23. The court specifically noted that "[t]he presentation of the re-test's negative result and the information demonstrating the general 'questionable' accuracy of [Division for Substance Abuse Services Laboratory] reports would have been sufficient to rebut the . . . marijuana use charge under a substantial evidence standard." *Id.*

Unlike in *Burka*, Plaintiff has not demonstrated the existence of any special circumstances that deprived him the opportunity to meaningfully challenge the evidence submitted by the City at the § 75 hearing. A review of the hearing officer's decision indicates that he weighed the testimonial and documentary evidence submitted by the parties and found that several of the Charges and Specifications were not supported by substantial evidence in the record. *Burka*'s understandable concern for an employee's access to evidence necessary to mount a meaningful defense is not implicated here where the safeguards provided pursuant to § 75 permitted Plaintiff a meaningful opportunity to

present evidence on his behalf, challenge the City's evidence, and otherwise defend against the Charges and Specifications levied against him.

Finally, the Court addresses the parties' most recent post-hearing submissions. Plaintiff has submitted three additional case citations for this Court's consideration. (*See* Dkt. 55). Among those cases, Plaintiff primarily relies upon *Charlton v. F.T.C.*, 543 F.2d 903 (D.C. Cir. 1976), which held that before an attorney's license could be suspended, the disciplinary charges against him must be proved by a preponderance of the evidence, and not merely by the standard of substantial evidence. *See id.* at 906-08. However, *Charlton* emphasized the weighty concerns involved when removing an attorney's license to practice law and noted that attorney disciplinary hearings are of a "quasi-criminal nature." *Id.* at 906 (quotation marks and footnote omitted). While the termination of one's employment is "an extremely significant deprivation," *Hudson*, 374 F.3d at 560, the loss of that property interest is distinguishable from the liberty interest that is lost when a professional license has been suspended or terminated, *see Jaeger v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 125 F.3d 844, 1997 WL 625006 (Table), at *1 (2d Cir. Oct. 9, 1997) ("A person's right to pursue the profession of his choice is recognized as a constitutionally protected liberty interest." (citing *Roth*, 408 U.S. at 569)); *see also Toussie v. Cty. of Suffolk*, 806 F. Supp. 2d 558, 579 (E.D.N.Y. 2011) ("[C]ourts in the Second Circuit have consistently held 'one must have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest.'" (quoting *Rodriguez v. Margotta*, 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999))).

- 34 -

Plaintiff also relies on *Smyth v. Lubbers*, 398 F. Supp. 777 (W.D. Mich. 1975) for the proposition that no standard of proof lower than a preponderance of the evidence would satisfy constitutional requirements during college student disciplinary proceedings. *See id.* at 799. In reaching this conclusion, the *Smyth* court focused not on the property interests at stake, but on the liberty interests at stake in that case. *See id.* at 796 ("The liberty interest of each of the plaintiffs is perhaps *more strongly implicated.*" (emphasis added)). Indeed, *Smyth* noted that the charges at issue involved acts that constituted crimes and would amount to "an extremely serious attack upon a person's good name and reputation." *Id.* The *Smyth* court further noted that "[t]his case is among the most serious ever likely to arise in a college context," and that the college was "claiming the power to shatter career goals, and to make advancement in our highly competitive society much more difficult for an individual than it already is." *Id.* at 797. As a result, *Smyth* is inapposite since the Fourth Department has already determined that there is no evidence that Plaintiff has been deprived of the opportunity to seek future employment in his profession, *see Marentette*, 159 A.D.3d at 1411-12, which is the only protected liberty interest Plaintiff has alleged has been deprived by the City (Dkt. 21 at ¶ 44).

Lastly, Plaintiff cites to *Butler v. Oak Creek-Franklin Sch. Dist.*, 172 F. Supp. 2d 1102 (E.D. Wis. 2001) for the proposition that high school disciplinary hearings also require a preponderance of the evidence standard of proof. (Dkt. 55). However, Plaintiff's reliance on *Butler* is also misplaced. The language Plaintiff quotes from *Butler* is a direct quote from the *Smyth* decision, which *Butler* used to explain the meaning of different standards of proof used in various factual applications. *See Butler*, 172 F. Supp. 2d at 1119.

In fact, *Butler* applied the "some evidence" standard in reviewing the administrative record, which "unlike the 'substantial evidence' standard[,] . . . is not intended as a substantive check on the accuracy of administrative fact-finding." *Id.* at 1118; *see also McDonald v. Bd. of Trs. of Univ. of Ill.*, 375 F. Supp. 95, 103 (N.D. Ill.) (stating that the "substantial evidence" standard "contemplates review for correctness" and, "as such[,] it probes deeper into the record than does a review for fairness which is the essence of a due process inquiry"), *aff'd*, 503 F.2d 105 (7th Cir. 1974); *see generally Universal Camera Corp.*, 340 U.S. at 477 (stating that the substantial evidence standard "must do more than create a suspicion of the existence of the fact to be established. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury" (quoting *N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939))).[2]

---

[2]     Furthermore, as Defendants point out in their responsive letter, "the Second Circuit has not employed or analyzed whether substantial evidence review is proper in a due process analysis in the school context." *Caiola v. Saddlemire*, No. 3:12-CV-00624 VLB, 2013 WL 1310002, at *5 (D. Conn. Mar. 27, 2013) (*see* Dkt. 56 at 3 n.1); *see also Rubino*, 2007 WL 685183, at *8 (stating that while "the Second Circuit has not specifically addressed the issue of the sufficiency of the evidence in school disciplinary proceedings," the court would assume that the disciplinary action "must be supported by substantial evidence in order to comport with due process" (footnotes omitted)); *see generally Patrick v. Success Acad. Charter Sch., Inc.*, No. 17-CV-6846 (PKC)(RLM), 2018 WL 6592942, at *22-23 (E.D.N.Y. Dec. 14, 2018) (applying the "substantial evidence" standard in determining whether the defendants met their burden of justifying a student's disciplinary suspension); *Binder*, 2010 WL 3257708, at *7 (concluding that the plaintiff failed to allege a procedural due process violation where the hearing officer applied the preponderance of the evidence standard to a student disciplinary hearing instead of the "required" substantial evidence standard). Therefore, there is at least some reason to believe that courts in this Circuit would disagree with *Smyth* and *Butler*.

In sum, because the substantial evidence standard requires the presentation of "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *see Consol. Edison Co. of N.Y.*, 305 U.S. at 229, and since due process necessitates only that a minimal pre-termination hearing be conducted before a covered public employee is terminated, the Court's application of the *Mathews* factors to the facts of this case leads it to conclude that the substantial evidence standard of proof sufficiently ensures that "there are reasonable grounds to find the charges against an employee are true and would support his termination," *Locurto*, 264 F.3d at 173-74. Accordingly, even if collateral estoppel does not bar Plaintiff's first cause of action alleging deprivation of a property right in violation of due process, this Court concludes on the merits that the substantial evidence standard is constitutionally sufficient under the facts of this case.

## II.     Motion for Judgment on the Pleadings

### A.     Legal Standard

Judgment on the pleadings may be granted under Fed. R. Civ. P. 12(c) "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief." *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d 473,

475 (W.D.N.Y. 2011). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56-57 (2d Cir. 2008) (citations omitted).

## B. The Remaining First Amendment Claim Fails to State a Viable § 1983 Cause of Action

Plaintiff's third cause of action alleges that the City violated his First Amendment right to petition the government for redress, "by requiring [him] to direct communications to the City, its Mayor, and City Council only through an attorney." (Dkt. 21 at ¶ 51). Defendants have moved for judgment on the pleadings, arguing that Plaintiff has failed to set forth sufficient facts to plausibly allege a First Amendment violation. (Dkt. 44-9 at 30-32).

### 1. General Principles

Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting § 1983). To state a § 1983 claim, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that the conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (citations omitted). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

In order to state a claim for relief under § 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010). Meanwhile, "a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005) (citing *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985)); *see also 5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 297 (S.D.N.Y. 2009) ("A suit for damages against a municipal officer in their official capacity is the equivalent of a damage suit against the

municipality itself." (internal quotations and citation omitted)). In order to maintain a § 1983 action against a municipal defendant, a plaintiff must identify a municipal "policy or custom" from which the alleged injury arose. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). To successfully state a claim under *Monell*, a plaintiff must "make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality." *Missel v. County of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir. 2008)).

### 2.  Plaintiff has Failed to Allege the Personal Involvement of any Individual Defendant

Plaintiff brings this civil rights action against the City, as well as three individual defendants who have been sued in their individual capacities and their official capacities as municipal officials. (*See* Dkt. 1). As it relates to their alleged individual liability under § 1983, Plaintiff has failed to allege any personal involvement by these three individual defendants in the deprivation of Plaintiff's right to petition the government for redress.[3] Indeed, Plaintiff alleges only that "the City, through its attorney, notified [him] that he had been stripped of his First Amendment rights to petition the government and that because

---

[3]     Arguably, Plaintiff did not intend to assert the First Amendment claim against the individual defendants. The Court notes that Plaintiff has alleged that "*the City* is liable for damages pursuant to the provisions of 42 U.S.C. § 1983" for the alleged deprivation of his First Amendment rights. (Dkt. 21 at ¶ 52 (emphasis added)). However, for the sake of completeness, the Court also analyzes whether Plaintiff has stated a § 1983 claim against the individual defendants in their individual capacities under this cause of action.

of his removal from his position as Fire Chief, he was only allowed to communicate with the Mayor and City Council through his attorney." (Dkt. 21 at ¶ 36). However, the City's attorney is not a named party in Plaintiff's Second Amended Complaint, and Plaintiff has failed to supply factual allegations that support a plausible inference that any one of the individual defendants violated Plaintiff's First Amendment rights. Moreover, because Plaintiff's allegations indicate that the only individual personally involved in the alleged First Amendment violation was the City's attorney, and not any of the three individual defendants currently named in this action, any amendment against the named individual defendants would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (stating that any request for leave to replead should be denied where the problem with the "causes of action is substantive," and any "[r]epleading would thus be futile"); *see also Ruggiero v. Canfield*, No. 14-CV-00307A(F), 2017 WL 9485692, at *21 (W.D.N.Y. Mar. 23, 2017) (recommending dismissal with prejudice for the failure to state a claim under § 1983 where "nothing in the Complaint . . . suggests the requisite personal involvement to sustain such claims"), *report and recommendation adopted*, No. 14-CV-307-A(F), 2017 WL 5152178 (W.D.N.Y. Nov. 7, 2017); *McClenic v. Shmettan*, No. 15-CV-00705(SJF)(SIL), 2016 WL 3920219, at *10 (E.D.N.Y. July 15, 2016) (dismissing the plaintiff's Eighth Amendment claim for the failure to state a claim under § 1983 where he "does not allege the personal involvement of any of the defendants in the purported deprivation of his Eighth Amendment right, nor any facts from which it may reasonably be inferred that any of the defendants were personally involved" in the alleged wrongful conduct); *Wallace v. Conroy*, 945 F. Supp. 628, 639 (S.D.N.Y. 1996) (recommending

dismissal with prejudice for failure to state a claim under § 1983 where "the Complaint . . . fails to allege any personal involvement in the conduct challenged by the sole defendant").

Therefore, to the extent Plaintiff's Second Amended Complaint asserts a § 1983 claim for the violation of his First Amendment right to petition the government as against the individual defendants in their individual capacities, it is dismissed with prejudice.

### 3.    Plaintiff has Failed to Plausibly Allege *Monell* Liability

Plaintiff broadly alleges that the City deprived him of his First Amendment rights. (*See* Dkt. 21 at ¶ 51). As noted above, "[a] municipality can be liable for a constitutional violation under the Supreme Court's decision in *Monell* in several ways." *Norton v. Town of Islip*, 678 F. App'x 17, 21 (2d Cir. 2017); *see Missel*, 351 F. App'x at 545 (stating that the plaintiff must set forth sufficient factual allegations of an official municipal policy or custom, or a decision by an individual with policy-making authority). However, Plaintiff has wholly failed to set forth any factual allegations that raise a plausible inference that the City acted upon an official unconstitutional policy or custom. Additionally, while Plaintiff alleges that the City notified Plaintiff, "through its attorney," that he could no longer petition the City for redress of his grievances and must only communicate to certain municipal officials through his attorney, (Dkt. 21 at ¶ 36), Plaintiff fails to allege that the City's attorney held "final policymaking authority" over this action. *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) ("[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion))); *see Norton*, 678

F. App'x at 22 (affirming the district court's dismissal of the plaintiff's constitutional claim against the municipality where the plaintiff "failed to plausibly allege that Deputy Town Attorney Sidaras had final policymaking authority over Town inspections of private property"); *Staten v. Vill. of Monticello*, No. 14-CV-4766 (KMK), 2015 WL 6473041, at *11 (S.D.N.Y. Oct. 26, 2015) (noting that the "[p]laintiff makes no allegations suggesting that [the building inspector or the town attorney] had final decision-making authority").

"Generally, a motion for judgment on the pleadings is without prejudice to the filing of an amended complaint, particularly where it is conceivable that the plaintiff may be able to file an amended complaint articulating facts stating a plausible claim for relief." *Spear v. City of Buffalo*, No. 11-CV-00012A (F), 2014 WL 1053987, at *12 (W.D.N.Y. Mar. 18, 2014), *report and recommendation adopted*, No. 11-CV-00012A (F), 2014 WL 1347759 (W.D.N.Y. Apr. 4, 2014). Unlike the assertion of individual liability against the individual defendants for the violation of Plaintiff's First Amendment rights, it is conceivable that Plaintiff could set forth allegations that sufficiently raise a plausible inference that the City deprived him of his right to petition the government for redress "pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality." *Missel*, 351 F. App'x at 545. Therefore, to the extent that Plaintiff's Second Amended Complaint asserts a § 1983 claim for the violation of his First Amendment right to petition the government as against the City and the individual defendants in their official capacity, it is dismissed without prejudice.

Finally, because Plaintiff's first, second, and third causes of action have been dismissed, Plaintiff's fourth and fifth "causes of action"—which seek injunctive relief and punitive damages, respectively—are also dismissed because these "claims" request the imposition of remedies related to substantive causes of action and do not represent separate and distinct legal claims in-and-of-themselves. *See, e.g.*, *Potente*, 282 F. Supp. 3d at 548; *Eldridge*, 968 F. Supp. 2d at 563-64. Because Plaintiff's substantive causes of action have all been dismissed, Plaintiff's requests for injunctive relief and punitive damages are necessarily dismissed as well.

## CONCLUSION

For the foregoing reasons, Defendant's cross-motion for summary judgment (Dkt. 42) is granted, and Plaintiff's motion for partial summary judgment (Dkt. 33) and motion for a preliminary judgment (Dkt. 34) are denied. The Clerk of Court is directed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:     January 8, 2019
         Rochester, New York